UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL CARTER (#410324),

                      Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS,
HARESH PANDYA and
JOHN AND JANE DOES 1-5,

                      Defendants,

_____/

CASE NO. 2:12-CV-12621
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S JUNE 15, 2012 EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (Doc. Ent. 3)

**I.**    **RECOMMENDATION:** The Court should deny without prejudice plaintiff's June 15, 2012 ex parte motion for temporary restraining order and preliminary injunction (Doc. Ent. 3). However, the Court's order should also provide that plaintiff may refile his request for injunctive relief once an appearance by any defendant has been entered,[1] once an answer or responsive pleading by any defendant has been filed, or once the due date for an answer or responsive pleading has passed.

**II.**    **REPORT:**

**A.**    **Plaintiff's June 15, 2012 Complaint**

---

[1]While the U.S. Marshal has informed the Court that Pandya and Stieve have returned executed waivers of service, no formal appearance has been entered by any defendant or by counsel for any defendant.

Joel Carter (#410324) is currently incarcerated at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan.  *See* Doc. Ent. 17; www.michigan.gov/corrections, "Offender Search." On April 12, 2012, while incarcerated at Macomb Correctional Facility (MRF) in New Haven, Michigan, Carter had notarized the instant complaint against the MDOC; Haresh Pandya, described as the Regional Medical Officer (RMO); and John and Jane Does 1–5, described as members of the "Pain Committee."  Doc. Ent. 1 ¶¶ 3-5.  By the time the complaint was filed on June 15, 2012, plaintiff was incarcerated at the Michigan Reformatory (RMI) in Ionia, Michigan. *See* Doc. Ent. 5.

In the allegations underlying his complaint, plaintiff alleges that he suffers from Multiple Sclerosis[2] and describes his efforts to obtain certain medication during June, July and August 2011 while he was incarcerated at Marquette Branch Prison (MBP) and Gus Harrison Correctional Facility (ARF).  Doc. Ent. 1 ¶¶ 11-19.  For example, plaintiff claims he was denied thirty-seven (37) days of Copaxone injections,[3] from July 11, 2011 to August 16, 2011, which exacerbated his neurological symptoms.  Doc. Ent. 1 ¶¶ 17-18.  Furthermore, plaintiff claims he "is not currently on any neuro-transmitting pain medication because the Pain Committee . . . has yet to respond to medical officials['] numerous request[s] to place Plaintiff on pain medication." Doc. Ent. 1 ¶ 19.

---

[2]Multiple Sclerosis is "[a] disease of the brain and spinal cord."  SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, VOLUME 3, M-281 (1995).  "The symptoms are incoordinated (awkward) movements, weakness, jerking of the arms and legs, peculiar speech (mingled with pauses), statesof pleasant hallucinations, etc."  *Id.*

[3]According to www.copaxone.com, Copaxone® is a glatiramer acetate injection which is "[a]pproved for the treatment of relapsing-remitting multiple sclerosis (RRMS) since 1996."

Plaintiff's complaint sets forth causes of action for (I) Eighth Amendment deliberate indifference against Pandya; (II) Eighth Amendment deliberate indifference against the Pain Committee; and (III) Americans with Disabilities Act (ADA) and Fourteenth Amendment discrimination and denial of services against the Pain Committee. *See* Doc. Ent. 1 ¶¶ 22-28, 29-34 and 35-40.[4]

**B.     The U.S. Marshal's December 14, 2012 attempt at service**

On December 14, 2012, the U.S. Marshal acknowledged receipt of documents for service of process upon Dr. Jeffrey Stieve, Dr. Haresh Pandya and Dr. Rickey Coleman. Doc. Ent. 15. That same day, the U.S. Marshal attempted service by mail upon Pandya, Coleman and Stieve.

On January 4, 2013, the U.S. Marshal informed the Court that the waivers sent to Pandya and Stieve were returned executed. Thus, Pandya and Stieve's answers are due on February 12, 2013. *See* Fed. R. Civ. P. 4(d)(3) ("Time to Answer After a Waiver.").[5]

The status of service upon Coleman is unclear. However, assuming service of the waiver upon Coleman was effective, the acknowledgment of waiver of service is due by January 18, 2013. *See* Fed. R. Civ. P. 4(d)(1)(F).[6]

**C.     Pending Motion**

Judge Murphy has referred this case to me to conduct pretrial proceedings. Doc. Ent. 13. Currently before the Court is plaintiff's May 21, 2012 ex parte motion for temporary restraining

---

[4]*See also* Doc. Ent. 1 at 13-24 (Exhibits).

[5]This represents sixty (60) calendar days from December 14, 2012, the date the request for waiver was sent.

[6]This represents thirty-five (35) calendar days from December 14, 2012, the date the request for waiver was sent.

order and preliminary injunction, which was filed on June 15, 2012.  *See* Doc. Ent. 3 at 1

(Motion); Doc. Ent. 3 at 2-4 (Affidavit in Support); Doc. Ent. 3 at 5-12 (Memorandum of Law in

Support).[7]

**D.    Discussion**

**1.    The record contains evidence of MDOC Kites and MDOC Grievances which provide
        some background for plaintiff's claims.**

Before I rule upon the pending motions, it is important to consider the substance of the

claims set forth in plaintiff's complaint, as well as the evidence provided in attachments to the

complaint and the motion for injunctive relief.  By way of background, plaintiff claims he was

experiencing severe neurological symptoms in 2004 and was sent to Duane L. Waters Hospital

(Jackson, MI), where he saw neurologist Dr. Verma, who prescribed daily injections of

Copaxone.  Doc. Ent. 1 ¶ 13.

During June 2011, plaintiff was incarcerated at MBP and experiencing neurological

symptoms.  He was examined by Physician's Assistant Kocha, who informed plaintiff that he

(Kocha) was seeking approval from the Regional Medical Director, Pandya or the Pain

Committee "for a neuro-transmitted medication, such as Neurontin[[8]] and Dilantin."[9]  Kocha

"sent a request to the Pain Committee" on June 6, 2011.  Doc. Ent. 1 ¶ 15.

---

[7]*See also* Doc. Ent. 3 at 13-20 (Exhibit A), Doc. Ent. 3 at 21-23 (Exhibit B).

[8]Neurontin® (gabapentin) is "a prescription medicine used to treat:  ● Pain from damaged
nerves (postherpetic pain) that follows healing of shingles (a painful rash that comes after a herpes
zoster infection) in adults.  ● Partial seizures when taken together with other medicines in adults and
children 3 years of age and older."  *See* http://labeling.pfizer.com/ShowLabeling.aspx?id=630,
Medication Guide, pp. 32-37, revised July 2012.

[9]Dilantin is "[a] medicine used to treat seizures, especially of epilepsy."  SCHMIDT'S
ATTORNEYS' DICTIONARY OF MEDICINE, VOLUME 1, D-99 (1995).

Plaintiff was transferred to ARF on June 16, 2011.  Doc. Ent. 1 ¶ 16.  On June 24, 2011, plaintiff completed an MDOC Step I grievance (ARF-2011-06-02398-28B) wherein he noted that "his legs ha[d] been burning for 4 months."  Doc. Ent. 1 at 20.  It was received at Step I on June 27, 2011.  Doc. Ent. 1 at 19.  It appears that the Step I response was dated June 27, 2011 and returned to Carter on June 29, 2011.  Doc. Ent. 1 at 20.

In the meantime, on June 27, 2011, plaintiff's Copaxone and Elavil[10] prescriptions expired.  According to plaintiff, Physician's Assistant Jindell renewed the prescription and submitted a request for approval to Pandya.  Jindell also submitted another request for plaintiff's pain medication.  Doc. Ent. 1 ¶ 16.

On June 27, 2011, plaintiff completed an MDOC Health Care Request, stating: "My legs have been hurting for 4 months from my M.S.  Marquette [Doctor] submitted a request to the pain committee a month ago.  I need some pain medication now!"  Doc. Ent. 3 at 18.  In a June 29, 2011 MDOC Kite Response, Victor J. Kaczmar, R.N., informed Carter that he would be "called out around [June 30, 2011] or so."  Doc. Ent. 3 at 19.

Plaintiff claims that on June 30, 2011 and on July 5, 2011, Jindell submitted requests to Pandya seeking approval to renew plaintiff's prescriptions for Copaxone and Elavil.  On July 6, 2011, Pandya approved the prescription for Elavil but disregarded the request to approve daily injections of Copaxone.  Doc. Ent. 1 ¶ 17.

Plaintiff received his last Copaxone injection on July 10, 2011.  Doc. Ent. 1 ¶ 17.  On July 11, 2011, plaintiff completed an MDOC Health Care Request which inquired whether the

---

[10]Elavil is "[a] medicine used to treat depression (especially endogenous)."  SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, VOLUME 2, E-33 (1995).

5

Regional Medical Officer had approved the refill for Elavil and whether the Pain Committee had approved his pain medication.  Doc. Ent. 3 at 16.

On July 12, 2011, plaintiff completed MDOC Step II Grievance Appeal in ARF-11-06-02398-28B, stating that he "suffers from Multiple Sclerosis and his legs ha[ve] been burning for over 4 months.  Health Care fails to provide pain medication because the Pain Committee has not approved or denied the request."  It was received at Step II on July 14, 2011.  Doc. Ent. 1 at 22.

In a July 14, 2011 MDOC Kite Response, Kaczmar informed Carter that, "[a]s far as [he could] tell . . . [plaintiff was] approved for more Elavil."  However, Kaczmar "[saw] no mention of any other drugs that ha[d] been approved or disapproved."  Doc. Ent. 3 at 17.

Plaintiff completed an MDOC Step I grievance (ARF-11-07-02691-12F) on July 17, 2011, noting that he had not received his Copaxone injections "due to the [RMO's] failure to approve the re[n]ewal of the medication."  Doc. Ent. 1 at 14.  It was received at Step I on July 20, 2011.  Doc. Ent. 1 at 13.

In the July 19, 2011 Step II Grievance Response to ARF-2011-06-02398-28B, Captain Foreman stated:

> . . . Per contact with RN Rothaar, Prisoner Carters information was sent to the pain management committee for review on [June 6, 2011], and noted that the committee only meets every other month or so.  She indicated that Prisoner Carter is currently receiving medication for pain, however they cannot dispense anything else until authorized by the committee.

Doc. Ent. 1 at 21, Doc. Ent. 3 at 23.  Apparently, the Step II response was returned to plaintiff on July 21, 2011.  Doc. Ent. 1 at 22.

In an August 1, 2011 Step I Grievance Response, Tammy Rothhaar, R.N., noted that Carter arrived at ARF on Copaxone.  She further explained:

He has MS. Due to the new rules, meds that require an RMO approval have to be resubmitted. This was done and it was pended by the RMO while we await PMC recommendations. PMC paperwork was submitted on [June 6, 2011]. As of this date we have no response from them. The pt is currently not receiving Copaxone.

Doc. Ent. 1 at 15, Doc. Ent. 3 at 22.

Plaintiff completed a Step III grievance appeal in ARF-11-06-02398-28B, wherein he explained that he suffers from Multiple Sclerosis, noted that he had been in pain for more than 4 months, and mentioned the MBP doctor's June 6, 2011 recommendation to the Pain Committee for a neurotransmitter pain medication. The Step III grievance appeal was received on August 4, 2011. Doc. Ent. 1 at 22-23.

On August 8, 2011, plaintiff completed an MDOC Health Care Request, in which he mentioned the June 6, 2011 request to the Pain Committee for approval of pain medication and inquired whether any other requests had been submitted. Doc. Ent. 3 at 14. In an August 11, 2011 MDOC Kite Response, Kaczmar informed Carter that Neurontin and Dilantin were being considered for his pain. Doc. Ent. 3 at 15.

On or about August 15, 2011, "Pandya approved Plaintiff's Copaxone and Plaintiff began receiving his injections again on August 17, 2011." Doc. Ent. 1 ¶ 18. According to plaintiff, "[o]n August 16, 2011, Jindell submitted another request to the Pain Committee to place Plaintiff on pain medication." Doc. Ent. 1 ¶ 19.

Plaintiff's Step II Grievance Appeal in ARF-2011-07-02691-12F, which complained about the RMO's failure to approve the renewal of plaintiff's Copaxone injection prescription and noted that he had gone thirty (37) days without his injections, was received on August 16, 2011. Doc. Ent. 1 at 16-17. In a September 1, 2011 Step II Grievance Appeal Response, Laura Kinder,

R.N. (Clinical Administrative Assistant, Southern Region Health Care Administration), noted the following after review of the Electronic Medical Record (EMR):

> a July 1, 2011 request for RMO approval of prescription for Copaxone;
> a July 5, 2011 RMO approval pended, awaiting Utilization Review;
> an August 12, 2011 RMO approval for Copaxone; and
> an August 13, 2011 prescription written for Copaxone.

Doc. Ent. 1 at 18.  This was returned to plaintiff on September 7, 2011.  Doc. Ent. 1 at 17.

By way of a September 6, 2011 MDOC Kite, Carter informed Nurse Ellenwood that he "[f]ell today from pain in [his] hips to [his] knees[,]" and that he "[n]eed[ed] pain medication."  In a September 8, 2011 MDOC Kite Response, plaintiff was informed that he had an appointment.  It appears that a Nurse Sick Call was to be scheduled around September 13, 2011.  Doc. Ent. 3 at 20.

The Step III Grievance Response in ARF-11-06-02398-28b, which upheld the Step II rejection, is dated September 27, 2011.  Doc. Ent. 1 at 24.

More than eight (8) months later, on June 15, 2012, plaintiff filed the instant complaint, wherein he claimed he was "not currently on any neuro-transmitting pain medication because the Pain Committee, has yet to respond to medical officials['] numerous request[s] to place Plaintiff on pain medication."  Doc. Ent. 1 ¶ 19.

**2.     Plaintiff's June 15, 2012 request for injunctive relief does not appear to be mooted solely by his various changes in location of confinement since his request was filed.**

In his May 21, 2012 motion for injunctive relief, filed on June 15, 2012, plaintiff claims that "[he] has, and continues to suffer irreparable harm in the form of chronic and substantial physical pain and suffering[,]" and claims that "[he] has been subjected to these conditions for approximately one year, which has exacerbated, and is likely to persist unless enjoined by this

Court." Doc. Ent. 3 ¶ 7. Plaintiff asks the Court to "issue a temporary restraining order, and a preliminary injunction requiring Defendants to provide Plaintiff with medication for his Multiple Sclerosis in accordance with appropriate medical standards." Doc. Ent. 3 at 4 ¶ 9.

On June 15, 2012, at the time he filed his motion for injunctive relief (Doc. Ent. 3), plaintiff was incarcerated at RMI (Doc. Ent. 5). As noted above, he is currently incarcerated at IBC.

A plaintiff's claims for declaratory and injunctive relief against a defendant at one institution may be rendered moot by plaintiff's transfer to another institution. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail.").

However, plaintiff's June 15, 2012 complaint is brought against the MDOC; Pandya, identified as a Regional Medical Officer; and members of the "Pain Committee." *See* Doc. Ent. 1 ¶¶ 3-5. MDOC PD 03.04.100 ("Health Services") explains, in part:

> There shall be a Medical Services Advisory Committee, which shall be chaired by the CMO [Chief Medical Officer]. Members shall include the Regional Medical Officers and others as determined by the CMO. The Committee shall be responsible for recommending improvements to the delivery of health care services, developing criteria for care to be provided to prisoners with chronic illness, approving medications to be added to the BHCS [Bureau of Health Care Services] uniform formulary, and other responsibilities as identified by the BHCS Administrator.

MDOC PD 03.04.100, effective 12/29/10, ¶ M.

Although the events which are the subject of his complaint appear to have occurred during plaintiff's incarceration at MBP and ARF (*see* Doc. Ent. 1 ¶¶ 6, 11, 15-19), the complaint identifies defendants Pandya and members of the "Pain Committee" as employees of the State of

Michigan (Doc. Ent. 1 ¶¶ 4-5).  If the defendants in this case are MDOC employees of the

MDOC's Bureau of Health Care Services (as opposed to employees located at a particular

prison), then plaintiff's various changes in location of confinement since the inception of this case

- his June 2011 to August 2011 confinement at MBP and ARF (Doc. Ent. 1 ¶¶ 15-19); his April

2012 confinement at MRF (Doc. Ent. 1 at 12); his June 2012 and July 2012 confinement at RMI

(Doc. Ent. 5, Doc. Ent. 8); and his current confinement at IBC (Doc. Ent. 17) - would not, alone,

moot plaintiff's claims for injunctive relief.

**3.      Still, at this time, the Court should deny without prejudice plaintiff's June 15, 2012 motion for injunctive relief.**

"The district court considers and balances four factors in making its decision [regarding a

preliminary injunction]: '(1) whether the plaintiff[s] [have] established a substantial likelihood or

probability of success on the merits; (2) whether there is a threat of irreparable harm to the

plaintiff[s]; (3) whether issuance of the injunction would cause substantial harm to others; and (4)

whether the public interest would be served by granting injunctive relief.'"  *Babler v. Futhey*, 618

F.3d 514, 519 -520 (6th Cir. 2010) (quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644,

649 (6th Cir.2007)).

In his brief, plaintiff argues that the Court should issue a temporary injunction and/or a

preliminary injunction "to prohibit defendants from further subjecting plaintiff to the

un[n]ecessary and wanton infliction of pain."  Doc. Ent. 3 at 5-12.  Within this argument, plaintiff

addresses (1) likelihood of success, (2) irreparable harm, (3) balance of hardships and (4) public

interest.  Doc. Ent. 3 at 6-12.

To be sure, the allegations underlying plaintiff's complaint mention daily Copaxone

injections; neuro-transmitted pain medication, such as Neurontina and Dilantin; and Elavil (Doc.

10

Ent. 1 ¶¶ 11-19).  In his complaint, plaintiff notes that Pandya approved the prescription for Elavil

on July 6, 2011 and approved the prescription for Copaxone on August 15, 2011.  Doc. Ent. 1 ¶¶

17, 18.  Consistently, plaintiff's ex parte motion for injunctive relief appears to be limited to his

request for pain medication:

> . . . issue a Temporary Restraining Order and Preliminary Injunction enjoining
> Defendants from acting with deliberate indifference to the Plaintiff's medical
> needs, and ***requiring them to provide Plaintiff with adequate pain medication for
> his Multiple Sclerosis***, in accordance with modern medical science and of quality
> within professional standards.

Doc. Ent. 3 at 12 (emphasis added).

Nonetheless, at this time, the Court should deny without prejudice plaintiff's request for

injunctive relief (Doc. Ent. 3).  First, even if the MDOC had been served as a defendant, "the

Michigan Department of Corrections is immune from an action in federal court for damages or

injunctive relief."  *Johnson v. Brown*, No. 88-1731, 1988 WL 122865, 1 (6th Cir. Nov. 16, 1988).

"[T]he MDOC is a state agency and the state of Michigan has not consented to civil rights suits in

the federal courts, [therefore,] the MDOC is entitled to Eleventh Amendment immunity."  *Sims v.*

*Michigan Dept. of Corrections*, 23 Fed.Appx. 214, 215 (6th Cir. 2001); *see also Walton v.*

*Michigan Dept. of Corrections*, No. 97-1485, 1998 WL 537546, 2 (6th Cir. Aug. 10, 1998) ("The

complaint and amended complaint were subject to dismissal on the ground of Eleventh

Amendment immunity, because only the MDOC, a state agency, was named as a defendant.").

Second, answers and/or responsive pleadings on behalf of the two defendants (Pandya and

Stieve) who have been served and appeared are not yet due.  Third, service as to another

defendant (Coleman) remains outstanding.

Instead, the Court should deny without prejudice plaintiff's June 15, 2012 ex parte motion for injunctive relief (Doc. Ent. 3). However, the Court's order should also provide that plaintiff may refile his request for injunctive relief once an appearance by any defendant has been entered, once an answer or responsive pleading by any defendant has been filed, or once the due date for an answer or responsive pleading has passed. *See LeBaron v. Clarke*, No. 10-12085, 2011 WL 241979 (D. Mass. Jan. 24, 2011).[11]

III.    **NOTICE TO PARTIES REGARDING OBJECTIONS**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

---

[11]LeBaron had alleged "inter alia, that he [wa]s being deprived of his right to free exercise of religion, and he complain[ed] about the purported 'kosher' food being provided to him, contending it is nutritionally deficient and not strictly kosher. He also challenge[d] sanctions imposed against him for possession of contraband items related to his food issues." *LeBaron*, 2011 WL 241979, *1.

With respect to LeBaron's third motion for an ex parte temporary restraining order and preliminary injunction, the Court noted that "absent a responsive pleading from the defendants, this court cannot find that LeBaron has demonstrated a likelihood of success on the merits or that the harm to him would outweigh the harm to the defendants or to the public." *LeBaron*, 2011 WL 241979, *1. The Court concluded that "[o]nce LeBaron properly serves process on the defendants and files proof of same, he may renew his motion for injunctive relief after the defendants have filed an Answer or other responsive pleading." *LeBaron*, 2011 WL 241979, *2.

*Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:1/10/13

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail and on January 10, 2013

s/Eddrey Butts
Case Manager