UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL CARTER,

        Plaintiff,

     v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.

CASE NO. 2:12-CV-12621
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL J. KOMIVES

_____/

## REPORT AND RECOMMENDATION ON: (1) PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT (docket #27); (2) DEFENDANT STIEVE AND PANDYA'S MOTION FOR SUMMARY JUDGMENT (docket #28); (3) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (docket #32); and (4) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (docket #33)

I.      RECOMMENDATION ........................................................... 2
II.    REPORT ..................................................................... 2
     A.   *Background* .......................................................... 2
     B.   *Cross-Motions for Summary Judgment* ................................. 4
         1.   *Legal Standard* ............................................... 4
         2.   *Eighth Amendment Claims* ...................................... 6
            a. Eighth Amendment Standard .................................. 7
            b. Analysis .................................................. 9
         3.   *ADA Claims* .................................................. 13
         4.   *Claims Against the MDOC and John/Jane Doe Defendants* ......... 15
     C.   *Plaintiff's Motion for Injunctive Relief* .......................... 16
         1.   *Legal Standard* .............................................. 17
         2.   *Analysis* .................................................... 20
     D.   *Plaintiff's Motion for Leave to Amend* ............................. 22
         1.   *Legal Standard* .............................................. 22
         2.   *Analysis* .................................................... 23
             a. State Law Claims .......................................... 24
            b. Federal Conspiracy Claims ................................. 26
            c. Additional Defendants ..................................... 28
            d. Additional Factual Allegations ............................ 29
     E.   *Conclusion* ........................................................ 29
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ................................. 29

I.      RECOMMENDATION: The Court should grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment, should grant summary judgment to the moving defendants on plaintiff's Eighth Amendment claims, *sua sponte* grant summary judgment to the non-moving defendants on plaintiff's Eighth Amendment claims, and *sua sponte* dismiss plaintiff's ADA claims against all defendants.  The Court should also deny plaintiff's motions for leave to file an amended complaint and for injunctive relief.

II.     REPORT:

A.      *Background*

Plaintiff Joel Carter, a state prisoner, commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA). At the times relevant to his complaint, plaintiff was incarcerated at the Marquette Branch Prison and the Gus Harrison Correctional Facility.  Named as defendants are the Michigan Department of Corrections, Regional Medical Officer Dr. Haresh Pandya, and John/Jane Does 1-5, members of the "Pain Committee."  Subsequent to the filing of plaintiff's complaint, I entered an Order requiring the Michigan Department of Corrections to provide the names and addresses of the members of the Pain Management Committee to the Marshal so service could be effected on these defendants.  As a result of this Order service was effected on one additional defendant, Chief Medical Officer Dr. Jeffrey Stieve.

In his complaint, plaintiff alleges that he suffers from multiple sclerosis (MS), a degenerative nerve condition.  In 2004, as a result of this condition, he was prescribed daily injections of Copaxone.  *See* Compl., ¶¶ 13-14.  On June 11, 2011, while incarcerated at the Marquette Branch Prison, he experienced neurological symptoms consisting of intense burning pain in his spinal cord,

hips, and legs, and tingling pain in his feet.  He was examined by Physician's Assistant Kocha, who indicated that he was seeking approval from defendant Panday or the Pain Management Committee for a neuro-transmitted medication such as Neurontin or Dilantin.  *See id.*, ¶ 15.  On June 16, he was transferred to the Gus Harrison Correctional Facility.  On June 27, his prescriptions for Copaxone and Elavil expired.  Physician Assistant Jindell submitted a request to defendant Pandya for approval of plaintiff's medication.  *See id.*, ¶ 16.  Plaintiff alleges that neither defendant Pandya nor the pain committee responded to Kocha's request for a neuro-transmitted medication or Jindell's request for renewal of his existing medications.  *See id.*, ¶¶ 15-16.  Jindell submitted additional requests on June 30 and July 5.  On July 6, defendant Pandya approved the Elavil prescription but did not address the Copaxone prescription.  Plaintiff received his final Copaxane injection on July 10.  On August 15, after plaintiff filed a complaint with the Michigan Department of Community Health, defendant Pandya approved plaintiff's Copaxone prescription, and plaintiff began receiving his daily injections on August 17.  *See id.*, ¶¶ 17-18.  On August 16, 2011, Jindell submitted another request to the Pain Management Committee for a neuro-transmitted pain medication.  As of the date of his complaint, this request had not been approved.  *See id.*, ¶ 19.

Plaintiff's complaint asserts three causes of action.  In Count I, he alleges that defendant Pandya's failure to approve his prescription for Copaxone constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  In Count II, plaintiff alleges that the Pain Management Committee members' denial of his requested medications constituted deliberate indifference to his serious medical needs.  Finally, in Count III, plaintiff alleges that defendants' failure to provide him appropriate medical treatment violated Title II of the ADA.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

The matter is currently before the Court on several motions filed by the parties. First, on March 1, 2013, plaintiff filed a motion for leave to file an amended complaint. In this motion, plaintiff seeks to: (1) add state law claims of gross negligence and intentional infliction of emotional distress; (2) add federal claims of conspiracy to deprive plaintiff of his civil rights pursuant to 42 U.S.C. §§ 1985(3), 1986; (3) add Daniel Heyns, Director of MDOC, as a defendant in his official capacity; (4) add William Borgerding, a member of the Pain Management Committee, as a defendant; and (5) add additional factual allegations regarding the treatment of his condition. Defendants have not filed a response to this motion. Second, on March 20, 2013, defendants Pandya and Stieve filed a motion to dismiss or for summary judgment. Defendants argue that plaintiff failed to exhaust his administrative remedies, and that he cannot establish a violation of his Eighth Amendment rights. On May 6, 2013, plaintiff filed a combined motion for summary judgment and response to defendants' motion. Finally, also on May 6, 2013, plaintiff filed a motion for a temporary restraining order and preliminary injunction. Plaintiff seeks an injunction preventing defendants from subjecting plaintiff to the unnecessary infliction of pain and requiring them to provide appropriate medication for his medical condition. Defendants Pandya and Stieve filed a response to this motion on June 7, 2013.

B.      *Cross-Motions for Summary Judgment*

        1.      *Legal Standard*

        Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury

4

could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted);

*see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

To establish a viable § 1983 claim, a plaintiff must show that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law.  *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994).  It is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior.  See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.  In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.  Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also, Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

2.    *Eighth Amendment Claims*

Plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel

and unusual punishment by denying him needed prescriptions.

### a. Eighth Amendment Standard

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle*

*v. Gamble*, 429 U.S. 97, 103 (1976)).  Such claims must satisfy both an objective and a subjective test.  *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  The plaintiff bears the burden of proving these elements by a preponderance of the evidence.  *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection.  *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981).  To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 349.  The objective component is contextually driven and is responsive to "'contemporary standards of decency.'"  *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).  The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton."  *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard.  *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06.  Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate.  *See id*. at 843-44.  However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health

8

or safety, or knowing of it, they acted reasonably under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

### b. Analysis

There is no question that plaintiff's MS and the related symptoms constitute a serious medical need. Thus, the only question is whether plaintiff has established a genuine issue of material fact with respect to whether defendants were deliberately indifferent to that need. The Court should conclude that he has not.

In his affidavit, defendant Pandya avers that he was the Regional Medical Officer (RMO) for the Southern Region. *See* Br. in Supp. of Def.s' Mot., Ex. G, Aff. of Haresh Pandya, M.D., ¶ 4 [hereinafter "Pandya Aff."]. He avers that at the time of the June 11, 2011, request for medication,

9

plaintiff was housed in the Northern Region, and thus his request for medication was handled by the Northern Region RMO (the defendant plaintiff seeks to add in his proposed amended complaint, William Borgerding).  *See id.*, ¶ 7 & Attachment 1.  He further avers that he was on annual leave from June 20 through July 5, 2011, and that the Northern Region RMO covered his duties during that time.  Thus, the Northern Region RMO responded to the July 1 request.  *See id.*, ¶¶ 9-11 & Attachment 2.  The July 1 request for Copaxone was not brought to his attention until after a utilization review was completed, and he approved the request for Copaxone and Elavil, shortly after, on August 12.  *See id.*  With respect to the pain medication requests, Pandya avers that the request was not received by the Pain Management Committee (PMC) until August 16, and was reviewed by the PMC on August 31.  *See id.*, ¶¶ 12-13 & Attachment 4.  Defendant Stieve, whose role was limited to his membership on the PMC, similarly avers that the consult, although completed by the onsite practitioner on June 6, was not received by the PMC until August 16, and was reviewed on August 31.  *See id.*, Ex. H, Aff. of Jeffrey Stieve, M.D., ¶¶ 7-8 & Attachment 1.  There is no dispute that plaintiff received constant treatment for his medical condition.  Nor is there any dispute that defendants gave consideration to plaintiff's medical needs, approving various medications to treat both his neurological symptoms and his pain.  Plaintiff's claim faults defendants for not acting more quickly on his requests, and for not prescribing the specific pain medication requested by his treating providers, specifically Neurontin.  However, the record shows that defendants gave due consideration to the requests for Neurontin.  This medication was first requested by Mr. Czop on March 15, 2010, who noted that the medication plaintiff was then taking, Baclofen, was no longer effective.  Pandya deferred that request, indicating that plaintiff should first be placed on a different medication, Tegretol.  Plaintiff indicated to Dr. Czop that he was "not

eager" to try Tegretol, and requested a stronger dosage of Baclofen instead.  *See* Def.s' Resp. to Pl.'s Mot. for Prelim. Inj., Exs. B-C.  Neurontin was again requested by P.A. Kocha on June 6, 2011, who recommended a temporary trial of the drug.  Borgerding deferred the recommendation pending review by the PMC, and instead directed that Dilantin be tried on a trial basis.  *See id*., Exs. D-E.

The foregoing record falls far short of establishing that defendants acted with deliberate indifference to plaintiff's serious medical needs.  With respect to the renewal of plaintiff's prescriptions of Copaxone and Elavil, the record shows at most that defendants may not have handled these requests as quickly as they could have, resulting in plaintiff being off Copaxone for 37 days.  However, plaintiff has failed to offer any evidence to show that defendants' failure to act more quickly on these requests was the result of a deliberately indifferent state of mind, as opposed to mere negligence or the defendants' reliance on the normal operation of the PMC review process. As the Supreme Court made clear in *Estelle*, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106.  "[A]n inadvertent failure to provide adequate medical care (such as medical malpractice) cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 107.  In the medical context, therefore, mere negligence, or even gross negligence, is insufficient to establish an Eighth Amendment violation.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860-61 n.5 (6th Cir. 1976).  Thus,

11

allegations of "an inadvertent failure to provide medical care . . . [or of] negligen[ce] in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 105-06; *see also*, *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. Aug. 4, 1999) (en banc). As the Seventh Circuit has explained, "'[d]eliberate indifference' means *recklessness* in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred. Such disregard is tantamount to intending that the injury occur." *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 941 F.2d 344, 348 (7th Cir. 1991)) (citations omitted); *accord Farmer*, 511 U.S. at 836 (equating "deliberate indifference" to the "recklessness" standard under criminal law); *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (negligence insufficient to establish deliberate indifference); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988) (gross negligence insufficient). The record evidence does not create a genuine issue of material fact with respect to whether defendants acted with this culpable mental state.

Further, to show that the delay in receiving Copaxone rose to a constitutional violation, plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Plaintiff has not placed any such evidence in the record. Thus, because "plaintiff has not submitted medical evidence that he suffered any harm," his deliberate indifference claim fails on this basis as well. *Hardy v. 3 Unknown Agents*, 690 F. Supp. 2d 1074, 1099 (C.D. Cal. 2010).

With respect to the failure to approve Neurontin, plaintiff likewise cannot show that defendants acted with deliberate indifference to his medical needs. The record shows that

12

defendants considered these requests.  Defendants did not, as plaintiff alleges, ignore these requests.

Rather, defendants prescribed alternative courses of treatment.  Defendants thus exercised their

professional medical judgment regarding the appropriate course of treatment.  Even if these

decisions were wrong or negligent, they do not show deliberate indifference to plaintiff's serious

medical needs.  This conclusion is not altered by the fact that defendants' treatment plan differed

from that of plaintiff's treating medical providers.  "A difference of opinion between medical

professionals concerning the appropriate course of treatment generally does not amount to deliberate

indifference to serious medical needs." *Acosta v. Naphcare*, No.2:09-cv-1998, 2010 WL 3522356,

at *5 (D. Nev. Sept. 2, 2010) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *see also*,

*Douglas v. Stanwick*, 93 F. Supp. 2d 320, 325 (W.D.N.Y. 2000); *Brewer v. Blackwell*, 836 F. Supp.

631, 644 (S.D. Iowa 1993).

Because plaintiff cannot show that defendants acted with the requisite subjective mental state

of deliberate indifference, the Court should grant defendants' motion for summary judgment and

deny plaintiff's motion for summary judgment.

3.      *ADA Claims*

The Court should also dismiss plaintiff's claim under Title II of the ADA.  The *in forma*

*pauperis* statute, pursuant to which plaintiff is proceeding, provides that "[n]otwithstanding any

filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any

time if the court determines that . . . the action . . . (ii) fails to state a claim on which relief may be

granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28

U.S.C. § 1915(e)(2)(b)(ii)-(iii).  The Prison Litigation Reform Act (PLRA) provides that a court may

*sua sponte* "dismiss any action brought with respect to prison conditions under section 1983 of this

13

title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief

can be granted, or seeks monetary relief from a defendant who is immune from such relief."  42

U.S.C. § 1997e(c)(1).  Where an *in forma pauperis* complaint fails to state a claim, dismissal under

§ 1915(e)(2)(b) is mandatory.  *See Bilal v. Driver*, 251 F.3d 1346, 1348 (11th Cir. 2001); *Rogler v.*

*United States Dep't of Health & Human Servs.*, 620 F. Supp. 2d 123, 128 (D.D.C. 2009); *Johnson*

*v. U.K. Government*, 608 F. Supp. 2d 291, 293 (D. Conn. 2009); *Banks v. County of Allegheny*, 568

F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Here, plaintiff's ADA claim fails to state a claim upon which relief may be granted.  With

respect to the individual defendants, individual defendants are not proper parties under the ADA.

Title II of the ADA provides, in relevant part, that "[s]ubject to the provisions of this subchapter,

no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA further

provides, however, that "[t]he term 'public entity' means–(A) any State or local government; (B)

any department, agency, special purpose district, or other instrumentality of a State or States or local

government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as

defined in section 24102(4) of Title 49)."  42 U.S.C. § 12131(1).  By its terms, the statute does not

apply to individuals, and thus "public entity" under the Act does not include an individual prison

official.  Accordingly, plaintiff's complaint fails to state a claim against the individual defendants

under the ADA.  *See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Tanney*

*v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (Roberts, J.); *Damron v. North Dakota*

14

*Comm'r of Corrections*, 299 F. Supp. 2d 970, 976 (D.N.D. 2004), *aff'd*, 127 Fed. Appx. 909 (8th Cir. 2005).

Further, with respect to both the individual defendants and the MDOC, the Court should conclude that plaintiff's claim fails as a matter of law. To establish a Title II violation, plaintiff must allege and show that (1) he has a disability; (2) he is otherwise qualified to receive the benefit or service at issue; and (3) he is being excluded from participation in, being denied the benefit of, or being subjected to discrimination in the provision of, the services, programs, or activities of the public entity because of their disability. *See Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005). Here, plaintiff has failed to allege that he is being excluded from participation in or being denied the benefit of any prison programs, services, or activities because of his disability. Plaintiff does not allege any discrimination on the basis of his disability. Rather, he claims that he is being denied proper medical care for his medical condition. Such challenges to the extent or quality of the medical care he received do not state a claim under the ADA or Section 504. *See Breedlove v. Costner*, 405 Fed. Appx. 338, 341 (10th Cir. 2010); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Elbert v. New York Dep't of Correctional Servs.*, 751 F. Supp. 2d 590, 596 (S.D.N.Y. 2010); *Althouse v. Roe*, 542 F. Supp. 2d 543, 547 (E.D. Tex. 2008); *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004). Accordingly, the Court should conclude that defendants are entitled to dismissal of plaintiff's ADA claim.

4.     *Claims Against the MDOC and John/Jane Doe Defendants*

The Court should likewise grant summary judgment *sua sponte* to the remaining defendants who have not yet been served. In addition to the Court's power to grant dismissal *sua sponte* provided by the PLRA and the *in forma pauperis* statute, it is well established that "[a] court may

15

grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related." *Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993); *see also*, *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008).  A court dismissing a plaintiff's claims against moving defendants may *sua sponte* dismiss non-moving defendants as well where "it is clear that the same ruling would inevitably apply to each of the defendants."  *Rose v. Arkansas Valley Envtl. & Utility Auth.*, 562 F. Supp. 1180, 1189 n.11 (W.D. Mo. 1983).  The same rule applies in the summary judgment context.  *See Zinna v. Cook*, 428 Fed. Appx. 838, 841 (10th Cir. 2011); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 384-85 (7th Cir. 2008); *Stepnes v. Ritschel*, 771 F. Supp. 2d 1019, 1048 (D. Minn. 2011).

Here, it is clear that the same ruling on plaintiff's Eighth Amendment claims would apply equally to the other named defendants.  For the reasons explained above, the record fails to show that the members of the PMC, and by extension the MDOC, acted with deliberate indifference to plaintiff's serious medical needs.  Rather, defendants provided medical treatment based on their exercise of professional medical judgment.  Even if this care was erroneous or negligent, the medical records submitted by the moving defendants establish that none of the defendants acted with a sufficiently culpable mental state to rise to the level of deliberate indifference.  Further, with respect to the MDOC, "[b]ecause the MDOC is a state agency and the State of Michigan has not consented to civil rights suits in the federal courts, the MDOC is entitled to Eleventh Amendment immunity." *Sims v. Michigan Dep't of Corrections*, 23 Fed. Appx. 214, 215 (6th Cir. 2001).  Accordingly, the Court should *sua sponte* grant summary judgment to the non-moving defendants.

C.     *Plaintiff's Motion for Injunctive Relief*

16

In his motion for a temporary restraining order and preliminary injunction, plaintiff seeks an injunction preventing defendants from subjecting him to unnecessary infliction of pain and requiring them to provide appropriate medication for his medical condition.  The Court should deny this motion.

1.    *Legal Standard*

"In the exercise of its discretion with respect to a motion for preliminary injunction, a district court must give consideration to four factors:  '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *American Civil Liberties Union of Ky. v. McCreary County, Ky.*, 354 F.3d 438, 445 (6th Cir. 2003) (quoting *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998)); *see also*, *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003).

"'The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met.'" *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir.2001)); *see also*, *Taubman Co.*, 319 F.3d at 774.  Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry.  Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *see also*, *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight,

17

a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed."). Further, plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Thus, plaintiff may not merely point to genuine issues of material fact which exist, but must affirmatively demonstrate his entitlement to injunctive relief.

This already stringent burden is even more difficult to meet where, as here, a plaintiff seeks an injunction not merely to maintain the status quo pending resolution of the case but to obtain affirmative relief. As the Supreme Court has explained, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Because of this, courts have identified three types of particularly disfavored preliminary injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." *Schrier v. University of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005). Motions seeking such preliminary injunctive relief most be more closely scrutinized than the already-disfavored motion for preliminary injunction which seeks to maintain the status quo. *See id.*; *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988).

With respect to the likelihood of success factor, plaintiff need not show that he is sure to prevail on any of his claims.  However, he must, "at a minimum, show[] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued."  *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997) (internal quotation omitted); *see also*, *Gaston Drugs, Inc. v. Metropolitan Life Ins. Co.*, 823 F.2d 984, 988 & n.2 (6th Cir. 1987).  With respect to the harm factor, the harm that would result in the absence of the injunction must be irreparable, not merely substantial.  As the Supreme Court has noted,

> "The key word in this consideration is *irreparable*.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 924 (D.C. 1958)).  In short, "[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages."  *Overstreet*, 305 F.3d at 578.  In evaluating the harm facing the plaintiffs, the Court must evaluate three factors: "(1) the substantiality of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof provided."  *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).

Finally, in addition to these four factors which govern all preliminary injunctions, plaintiff's suit challenging the conditions of confinement is subject to § 802 of the Prison Litigation Reform Act, which in relevant part provides:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the

least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).[1]

2.    *Analysis*

Here, plaintiff has not met the stringent standards necessary to show his entitlement to a preliminary injunction which grants him affirmative relief.  As explained above, defendants are entitled to summary judgment on plaintiff's claims, and thus plaintiff cannot show a likelihood of success on the merits.  "For injunctive relief, the plaintiff[] must show that the defendants were, at the time of the suit, 'knowingly and unreasonably disregarding an objectively intolerable risk of harm and that they will continue to do so.'" *Laube v. Haley*, 234 F. Supp. 2d 1227, 1242 (M.D. Ala. 2002) (quoting *Farmer*, 511 U.S. at 846).  Thus, it is not enough for plaintiff to merely show that defendants were, during the course of his treatment, deliberately indifferent to his medical needs. To be entitled to injunctive relief, plaintiff must also show that they continue to be deliberately indifferent, such that defendants' acts or omissions are likely to cause him *future* harm.  It is well-established that "[a] preliminary injunction cannot be issued based on past harm.  The purpose of a preliminary injunction is to prevent *future* irreparable harm." *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997).

With respect to plaintiff's general request for an injunction requiring defendants to provide him with appropriate treatment, plaintiff has failed to establish a likelihood of success on a claim

---

[1]The referenced principles of comity prevent a court from ordering "any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless—(i) Federal law requires such relief to be ordered in violation of State or local law; (ii) the relief is necessary to correct the violation of a Federal right; and (iii) no other relief will correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(B).

that defendants' current treatment is deliberately indifferent.  As explained above, the record

currently before the Court shows that plaintiff has received, and continues to receive, medical care,

treatment, and medications from defendants, and that defendants were not deliberately indifferent

to his serious medical needs.  Thus,

> the record shows [plaintiff] is receiving medical treatment from Defendants. He
> appears to simply disagree with the course of his treatment. This disagreement does
> not state an Eighth Amendment claim. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803,
> 811 (10th Cir.1999) ("[A] prisoner who merely disagrees with a diagnosis or a
> prescribed course of treatment does not state a constitutional violation."). Therefore,
> [plaintiff] has not shown a substantial likelihood of success on the merits.

*White v. Goff*, 348 Fed. Appx. 366, 369-70 (10th Cir. 2009).  With respect to his request for a

specific medication, as another court has recently explained:

> "[A] prisoner has no right to choose a specific form of medical treatment," so long
> as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140
> (2d Cir. 2000). An inmate's claims against members of a prison medical department
> are not viable under § 1983 where the inmate receives continuing care, but believes
> that more should be done by way of diagnosis and treatment and maintains that
> options available to medical personnel were not pursued on the inmate's behalf.
> *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Finally,
> "mere disagreement as to the proper medical treatment" is insufficient to state a
> constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)
> (citations omitted).

*Williams v. Correctional Medical Servs.*, 629 F. Supp. 2d 360, 372 (D. Del. 2009).  In short,

"[a]lthough [plaintiff] has raised some very serious allegations about his medical care, [he] is

currently . . . receiving medical treatment. He has not sufficiently demonstrated that he is currently

receiving a level of care that would violate constitutional standards such that he is entitled to

preliminary injunctive relief."  *McSorley v. Northern Nev. Correctional Ctr.*, 225 Fed. Appx. 448,

449 (9th Cir. 2007).  Accordingly, the Court should deny plaintiff's motion for a preliminary

injunction.

D.   *Plaintiff's Motion for Leave to Amend*

Finally, plaintiff seeks leave to amend his complaint.  Because amendment would be futile, the Court should deny plaintiff's motion.[2]

1.   *Legal Standard*

Ordinarily, leave to amend a complaint or other pleading "shall be freely granted when justice so requires."  FED. R. CIV. P. 15(a).  Generally, courts have shown "a strong liberality . . . in allowing amendments under Rule 15(a)."  *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865 (4th Cir. 1941).  As the Supreme Court has stated:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Thus, "[w]hen there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is abuse of discretion to deny [the] motion." *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).  In short, courts should construe liberally Rule 15(a) in favor of permitting amendment.  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 522 (6th Cir. 1999); *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987).

---

[2]Although I have authority to hear and determine plaintiff's motion for leave to amend pursuant to 28 U.S.C. § 636(b)(1)(A), the resolution of this motion is intertwined with the resolution of the parties' summary judgment motions.  Accordingly, I include plaintiff's motion to amend in this Report rather than resolving it by Order.

22

Nevertheless, as *Foman* makes clear there are certain situations in which it is appropriate to deny leave to amend.  One such circumstance is when amendment would be "futil[e]."  *Foman*, 371 U.S. at 182; *see also*, *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003).  Amendment is futile when the proposed amendment is subject to dismissal under Rule 12(b)(6), that is, when the proposed amendment fails to state a claim upon which relief may be granted.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 307 (6th Cir. 2000); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000).  When, as is the case here, the motion to amend is made in response to a motion for summary judgment, the Court may properly look to the affidavits and other evidence in the record.  In such a case, "[f]aced with the affidavits and documentary evidence filed by the defendants in support of summary judgment, the Court cannot assess the proposed amended complaint as if that evidence does not exist."  *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1414 (S.D. Ind. 1996).  In such a case, the proposed amended complaint is futile under Rule 15(a) not only if it would fail to survive a motion to dismiss for failure to state a claim, but also if the amended pleading could not survive a previously filed motion for summary judgment.  *See Bauchman v. West High Sch.*, 132 F.3d 542, 561-62 (10th Cir. 1997); *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989); *Smith*, 938 F. Supp. at 1414.

2.   *Analysis*

Here, plaintiff seeks to amend his complaint to add: (1) state tort claims of gross negligence and intentional infliction of emotional distress; (2) a claim that defendants conspired to deprive him of his civil rights under 42 U.S.C. §§ 1985(3), 1986; (3) MDOC Director Daniel Heyns as a defendant; (4) the identities of the John/Jane Doe defendants; (5) William Borgerding as a

defendant; and (6) additional factual allegations.  Leave to amend in all these respects would be futile.

### a. State Law Claims

Leave to amend to add the proposed state law claims would be futile because the Court should decline to exercise supplemental jurisdiction over these claims.  Congress has provided for limited, supplemental jurisdiction over state law claims that are related to federal claims over which a court has original jurisdiction:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

28 U.S.C. § 1367(a).  However, Congress has also provided that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  In determining whether to exercise supplemental jurisdiction, courts should consider the following factors: judicial economy, convenience, fairness to litigants, and comity.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  But, when "federal law claims are eliminated before trial, the balance of these factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also, Gibbs*, 383 U.S. at 726 ("if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1307 (9th Cir. 1992); *Morse v. University of Vermont*, 973 F.2d 122, 127-28 (2d Cir. 1992); *Reynolds v. Mercy Hosp.*, 861 F. Supp. 214 (W.D.N.Y. 1994);

24

*Heller v. CACL Federal Credit Union*, 775 F. Supp. 839, 843 (E.D. Pa. 1991).

Thus, "federal courts, absent exceptional circumstances, should abstain from exercising [supplemental] jurisdiction when federal claims in a case can be disposed of by summary judgment." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986). Accordingly, federal courts routinely decline to exercise supplemental jurisdiction over state law claims where the plaintiffs' federal civil rights claims are dismissed. *E.g., Martinez v. Colon*, 54 F.3d 980, 990-91 (1st Cir. 1995); *Rhyne v. Henderson County*, 973 F.2d 386, 395 (5th Cir. 1992); *Wynn v. Morgan*, 861 F. Supp. 622, 637 (E.D. Tenn. 1994); *Stera v. Hunt Real Estate Corp.*, 859 F. Supp. 661, 668 (W.D.N.Y 1994); *Mark v. Borough of Hatboro*, 856 F. Supp. 966, 976-77 (E.D. Pa. 1994), *aff'd*, 51 F.3d 1137 (3d Cir. 1995); *Wexley v. Michigan State Univ.*, 821 F. Supp. 479, 487 (W.D. Mich. 1993), *aff'd*, 25 F.3d 1052 (6th Cir. 1994); *Cruz v. City of Wilmington*, 814 F. Supp. 405, 413-14 (D. Del. 1993); *Lahaza v. Azeff*, 790 F. Supp. 88, 93-94 (E.D. Pa. 1992); *Procopio v. Johnson*, 785 F. Supp. 1317, 1320 (N.D. Ill. 1992), *aff'd*, 994 F.2d 325 (7th Cir. 1993). Here, as explained above, plaintiff's federal claims are all subject to dismissal or summary judgment, and thus the Court should decline to exercise supplemental jurisdiction over plaintiff's purported state law claim.

Further, Congress has also provided that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)" if there are compelling reasons for doing so. 28 U.S.C. § 1367(c)(4). In determining whether to exercise supplemental jurisdiction, courts should consider the following factors: judicial economy, convenience, fairness to litigants, and comity. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Here, comity counsels in favor of declining to exercise supplemental jurisdiction. Michigan has established a thorough and complex set of

25

procedures for asserting medical malpractice claims.[3]  Under § 1367, "interests of comity weigh against the exercise of supplemental jurisdiction given the procedural requirements in Michigan for filing a medical malpractice claim."  *Getter v. Doe*, No. 11-12021, 2012 WL 834556, at *6 (E.D. Mich. Mar. 12, 2012) (Cohn, J.); *see also*, *Reed-Bey v. Pramstallar*, No. 06-10934, 2012 WL 987830, at *6 (Feb. 15, 2012) (Whalen, M.J.), *magistrate judge's report and recommendation adopted*, 2012 WL 987854 (E.D. Mich. Mar. 23, 2012) (Roberts, J.).  Accordingly, because the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims, leave to amend to add these claims would be futile.

### b. Federal Conspiracy Claims

In his proposed amended complaint, plaintiff alleges "conspiracy to deprive the plaintiff of civil rights, in contravention of 42 U.S.C. § 1985(3) and § 1986."  Pl.'s Proposed 1st Amend. Compl., ¶ 1.  The amended complaint makes no further mention of these statutes or of a conspiracy.

Section 1985(3) provides:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the

---

[3]Although plaintiff's claims are based on gross negligence and intentional infliction of emotional distress, they are based on his assertion that he was denied adequate medical treatment.  It is well established under Michigan law that "'a complaint cannot avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence.'"  *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 43, 594 N.W.2d 455 (1999) (quoting *McLeod v. Plymouth Court Nursing Home*, 957 F.Supp. 113, 115 (E.D.Mich., 1997)).

> recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  In *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Court concluded, after an examination of the legislative history of the 1871 Ku Klux Klan Act upon which § 1985(3) is based, that the section reaches not only conspiracies formed under color of law, but also purely private conspiracies.  *Id.* at 101.  Wary that this might establish a general federal tort, the Court went on to state:

> The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose--by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment.

*Id.* at 102.  Thus, in order to state a cause of action under § 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Id.*; *see also, Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993); *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 833-35 (1983); *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627-28 (11th Cir. 1992); *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223-24 (6th Cir. 1991).  This requirement must be met regardless of whether the conspiracy is purely private or involves state actors.  *Cf. Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir. 1985); *Harrison v. Brooks*, 519 F.2d 1358, 1359-60 (1st Cir. 1975).

Plaintiff has not alleged in his proposed amended complaint that the defendants' actions were based on some racial or other invidiously discriminatory animus.  Thus, he has failed to state a claim under § 1985(3).  Further, because as noted above the defendants' actions "fail to implicate a constitutional right, a conspiracy that has as its purpose the very same non-cognizable [purpose] also fails to state a legal claim."  *Mazloum v. District of Columbia*, 442 F. Supp. 2d 1, 10 (D.D.C. 2006);

*see also*, *Lara v. City of Chicago*, 968 F. Supp. 1278, 1292 (N.D. Ill. 1997). Plaintiff's related claim

under § 1986 fails for the same reason. As another court has explained, § 1986

> "provides the claimant with a cause of action against any person who, knowing that
> a violation of § 1985 is about to be committed and possessing power to prevent its
> occurrence, fails to take action to frustrate its execution." *Rogin v. Bensalem
> Township*, 616 F.2d 680, 696 (3d Cir.1980). Because § 1986 claims depend on a
> underlying violation of § 1985, "if the claimant does not set forth a cause of action
> under the latter, its claim under the former must fail also." *Id.* Because there is no
> conspiracy claim under § 1985(3), the defendants' motion for summary judgment
> under § 1986 for neglecting to prevent a conspiracy is granted.

*Burgos v. Canino*, 641 F. Supp. 2d 443, 458 (E.D. Pa. 2009). Accordingly, the Court should

conclude that leave to amend to add a conspiracy claim under §§ 1985(3) and 1986 would be futile.

### c. Additional Defendants

Likewise, the Court should conclude that leave to amend to add additional defendants would

be futile. Plaintiff seeks to add as defendants three members of the PMC. As explained above,

however, plaintiff's claims against the unnamed PMC members are subject to summary judgment.

Thus, amending the complaint to specifically name the individuals in the place of their previous

John/Jane Doe designation would be futile. Likewise, leave to amend to add MDOC Director Daniel

Heyns would be futile. As explained above, it is well established that liability in a § 1983 action

cannot be based on a theory of *respondeat superior. See Iqbal*, 129 S. Ct. at 1948 (2009); *Monell*,

436 U.S. at 691. "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a

defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz*,

834 F. Supp. at 304. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own conduct,

has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. In other words, in order to state a claim

under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual

was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren*, 152 F.3d at 1194; *see also*, *Carr*, No. 98-6395, 1999 WL 1206879, at *1; *Salehpour*, 159 F.3d at 206. Plaintiff's proposed amended complaint does not set forth any allegations against Heyns or suggest that he was in any way personally involved in plaintiff's medical care. Thus, leave to amend to add Heyns as a defendant would be futile.

### d. Additional Factual Allegations

Finally, plaintiff seeks leave to amend to add further factual allegations. The only additional factual allegations asserted in the proposed amended complaint relate to the March 2010 request for Neurontin made by Dr. Czop. As explained above, however, Pandya's denial of this request and provision of alternative medication did not rise to the level of deliberate indifference. Thus, leave to amend to add these factual allegations would be futile.

### E.   *Conclusion*

In view of the foregoing, the Court should grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment. Specifically, the Court should grant summary judgment to defendants Pandya and Stieve on plaintiff's Eighth Amendment claims, *sua sponte* grant summary judgment on these claims to the remaining defendants, and *sua sponte* dismiss plaintiff's ADA claims. The Court should also conclude that leave to amend plaintiff's complaint would be futile, and the Court should therefore deny plaintiff's motion for leave to amend. Finally, the Court should deny plaintiff's motion for a temporary restraining order and preliminary injunction.

### III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                              s/ Paul J. Komives
                                              PAUL J. KOMIVES
                                              UNITED STATES MAGISTRATE JUDGE
Dated: July 11, 2013


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Joel Carter and Counsel of Record on this date.

Date: July 11, 2013                        s/ Lisa C. Bartlett
                                              Case Manager

30